**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Debra Elizabeth Stephens,<br><br>Plaintiff,<br><br>v.<br><br>Corizon Health Care, et al.,<br><br>Defendants. | No. CV-16-02202-PHX-DLR (BSB)<br><br>**ORDER** |

Defendants Corizon Health Inc. ("Corizon") and Remy Rodriguez ("Rodriguez") (collectively, the "Corizon Defendants") have filed a "Motion to Compel Preliminary Expert Opinion Affidavit" related to Plaintiff's state law claims. (Doc. 81.) The Corizon Defendants ask the Court to order Plaintiff to serve a preliminary expert opinion affidavit concerning all state law claims asserted against the Corizon Defendants within thirty days of this Court's Order pursuant to Ariz. Rev. Stat. § 12-2603(D). (Doc. 81.) Plaintiff has not responded to this motion. The Court grants the Corizon Defendants' motion.[1]

---

[1] On November 16, 2017, Defendant Gray filed a renewed motion to compel Plaintiff to submit a preliminary expert opinion affidavit on her state law claims against Defendant Gray. (Doc. 61.) After the Court granted extensions for the response and reply deadlines, Plaintiff filed her response on December 14, 2017 (Doc. 69), and Defendant Gray filed his reply on December 28, 2017. (Doc. 74.) On February 5, 2018, the Court granted Defendant Gray's motion to compel and ordered Plaintiff to submit a preliminary expert opinion affidavit to support her state law medical malpractice claims. (Doc.75.) Plaintiff did not file the required affidavit and Defendant moved to dismiss the state law claims asserted against him in Counts Two, Three, and Five. (Doc. 85.) That motion is pending. On June 26, 2018, Defendants Corizon and Rodriquez filed the pending motion to compel Plaintiff to submit a preliminary expert opinion affidavit and noted that they had "inadvertently failed" to timely join Defendant Gray's renewed motion to compel. (Doc. at 3, n.1.)

## I. Arizona Statutory Requirements for Medical Malpractice Claims

Under Arizona law, medical malpractice claims are governed by statute.[2] Ariz. Rev. Stat. §§ 12-2603–04; *see also Seisinger v. Siebel*, 203 P.3d 483, 493 (Ariz. 2009). Additionally, Arizona law has specific requirements for maintenance of medical malpractice actions. *See* Ariz. Rev. Stat. §§ 12-2603–04.

First, the plaintiff must certify whether expert opinion testimony is needed to establish the provider's standard of care and liability "in a written statement that is filed and served with the claim." Ariz. Rev. Stat. § 12-2603(A). Second, if an expert is necessary, the claimant must "serve [the] preliminary expert opinion affidavit with the initial disclosures." Ariz. Rev. Stat. § 12-2603(B). The preliminary expert opinion affidavit must contain the following information: (1) the expert's qualifications to express a medical opinion on the standard of care or liability on the claim; (2) the factual basis for each medical claim against the health care professional; (3) what conduct by the health care professional constituted a violation of the standard of care or resulting liability; and (4) how the health care professional's conduct caused or contributed to the claimant's damages. *Id.*; *see, e.g.*, *Gorney v. Meaney*, 150 P.3d 799, 802, 804 (Ariz. Ct. App. 2007). Third, "[i]f the claimant . . . certifies that expert testimony is not required for the claim . . . [and] the healthcare professional . . . disputes that certification in good faith," the defendant healthcare professional can file a motion to compel the plaintiff to serve a preliminary expert affidavit. Ariz. Rev. Stat. § 12-2603(D).

## II. Relevant Procedural Background

On February 27, 2017, Plaintiff filed an Amended Complaint alleging, among other claims, the following state law claims against the Corizon Defendants: (1) a state law medical negligence claim concerning medical care and treatment for an alleged tongue mass (Count Five); (2) an intentional infliction of emotional distress claim based upon the medical negligence alleged in Count Five (Count Two); and (3) a negligent

---

[2] These statutory requirements are substantive and, therefore, a reviewing federal court must adhere to them when considering Arizona medical malpractice claims. *Kaufman v. Jesser*, 884 F. Supp. 2d 943, 953 (D. Ariz. 2012).

infliction of emotional distress claim based upon the negligence alleged in Count Five (Count Three). (Doc. 15; *see also* Doc. 16.) As previously noted, the Court has ordered Plaintiff to submit a preliminary expert opinion affidavit to support her state law claims against Defendant Gray. (Doc. 75.) Plaintiff has not submitted the required affidavit. The Corizon Defendants now move to compel Plaintiff to produce a preliminary expert opinion affidavit related to Plaintiff's state law claims asserted against them in Counts Two, Three, and Five.[3] (Doc. 81.) Plaintiff has not responded to that motion and the time to do so has passed.

### III. Plaintiff's Allegations

On March 4, 2013, Corizon contracted with the Arizona Department of Corrections ("ADC") to provide medical, mental health, and dental care to the inmates housed at Arizona prison complexes, including the prison in Perryville—where Plaintiff has at all relevant times been incarcerated. (Doc. 15 at ¶ 17.) Plaintiff alleges that despite Corizon's awareness of system-wide deficiencies that have caused, and continue to cause, harm to inmates such as Plaintiff, Corizon continues to enable certain customs, decisions, and policies that cause harm to inmates in Corizon's custody. (*Id.* at ¶ 18.)

Plaintiff alleges that for an inmate to request health care, he or she must submit a health needs request ("HNR") that describes the need for medical, dental, or mental health attention. (*Id.* at ¶ 20.) Plaintiff alleges that HNR applications cost money, are regularly rejected, and when they are not rejected, are often not processed in a timely manner. (*Id.* at ¶¶ 20–21.) Plaintiff further alleges that Defendants are intentionally indifferent to the harm that may result from failing to provide the requested care. (*Id.* at ¶ 21.)

---

[3] The Corizon Defendants construe Plaintiff's October 20, 2017 certification, pursuant to Ariz. Rev. Stat. § 12-2603(A)—that expert testimony was not necessary to prove Defendant Gray's standard of care or liability with regard to Count Five—as applying to all of Plaintiff's state medical malpractice claims. (Doc. 58); *see* Ariz. Rev. Stat. § 12-2603(D) (allowing for a motion to compel after a claimant certifies that expert testimony is not necessary). Plaintiff has not disputed the Corizon Defendants' interpretation of Plaintiff's certification. The Court finds that the motion to compel is properly filed because Plaintiff has certified that expert testimony is not necessary to establish her medical malpractice claims.

Plaintiff alleges that Defendants have a practiced policy of failing to prescribe, provide, and properly manage medication, and that when medication is prescribed and provided, it is done "only . . .[in] incorrect, interrupted, or incomplete dosages." (*Id.* at ¶¶ 22–23, 32) (emphasis added). Plaintiff claims that Corizon's alleged conduct has led to Plaintiff experiencing delays in receiving medicine and medical supplies. (*Id.* at ¶ 22.) Plaintiff further alleges that Defendant Corizon consistently understaffs health care positions, which results in insufficient staff to timely respond to inmates' health care requests and provide follow-up care. (*Id.* at ¶ 24.)

Plaintiff alleges that on January 7, 2016 she was sent to dental specialist Dr. Donovan Hanson for a biopsy and potential removal of a mass on her tongue. (*Id.* at ¶ 28.) Plaintiff alleges that Dr. Hanson conducted surgery and removed the mass without warning Plaintiff that the surgery would require general anesthesia or that the mass would be excised. (*Id.* at ¶¶ 29–30.) Plaintiff claims that had she known that the mass would be excised, she would not have agreed to the surgery. (*Id.* at ¶ 29) Plaintiff alleges that Dr. Hanson prescribed Plaintiff antibiotics and directed Defendant Gray to start Plaintiff on the antibiotic regimen the day of the surgery, and to provide Plaintiff with a sterile wash to use post-surgery as part of her wound care regimen. (*Id.* at ¶ 31.) Plaintiff alleges that post-surgery, Defendant Gray approved "nothing else" besides Tylenol for the pain, and did not provide Plaintiff with anything for wound care. (*Id.* at ¶ 33.)

Plaintiff alleges that three days after her surgery, her stitches split and caused "an open, gaping surgical wound filled with pus." (*Id.* at ¶ 34.) Plaintiff alleges that she requested to see a doctor immediately, but her request went unanswered. (*Id.* at ¶ 35.) About a week after surgery, Plaintiff was sent to a dental facility where she allegedly complained of pain and an infection in her wound, but a dental student substituting for Defendant Gray stated he was not authorized to take any action. (*Id.* at ¶ 36.) Plaintiff claims that she filed several HNRs to try to get her pain addressed. (*Id.*) Plaintiff further alleges that after "countless" HNRs and grievances and "weeks" of complaining about

the infection, a "practitioner" prescribed codeine and amoxicillin—both of which Plaintiff alleges were ineffective. (*Id.* at ¶¶ 37–38.)

Plaintiff alleges that she saw Defendant Gray in February 2016 and she showed him an "open, oozing wound." (*Id.* at ¶ 40.) Plaintiff claims that Defendant Gray indicated that he would prescribe an antibiotic, and prescribed Acyclovir. (*Id.* at ¶ 41.) Plaintiff claims that Acyclovir is not an antibiotic, and that it made the infection and wound worse. (*Id.*) Plaintiff alleges that she made repeated requests for health care, which were ignored. (*Id.* at ¶¶ 42–44.) Furthermore, Plaintiff alleges her lack of prompt medical care caused sleeping and eating issues, which resulted in her losing weight. (*Id.* at ¶¶ 42, 44–46.) She further alleges that she submitted additional HNRs and eventually the bacteria in her mouth was cultured and was determined to be positive for an infection that is highly resistant to antibiotics and difficult to treat. (*Id.* at ¶ 43.)

Plaintiff alleges that she visited a dental specialist on May 26, 2016, who told Plaintiff that she had a blocked gland, which would continue to burst and heal. (*Id.* at ¶ 46.) The specialist told Plaintiff that he could have conducted surgery to fix the problem if Plaintiff been diagnosed earlier, but Plaintiff had developed too much scar tissue to successfully perform the surgery. (*Id.*) Plaintiff alleges that the dental specialist prescribed a non-narcotic pain medication, daily ice packs three times a day, and a steroid cream. (*Id.* at ¶ 47.) Plaintiff alleges she only received a small number of pain pills, the ice packs for a few days, and no steroid cream. (*Id.* at ¶ 48.) Plaintiff alleges that her tongue's condition continued to deteriorate due to lack of treatment, and that by June 2016, her tongue had turned black. (*Id.* at ¶¶ 49–50.)

Plaintiff filed her Complaint in this matter on July 5, 2016. (Doc. 1.) Plaintiff alleges that the medical staff at Perryville have taken retaliatory actions against Plaintiff for filing this suit. (Doc. 15 at ¶ 53.) In support of this allegation, Plaintiff claims that her medications go unordered without explanation, and that when her medication is ordered, the medication is not approved for 10–15 days, and she waits an additional 2–3 days for the medication to arrive once approved. (*Id.* at ¶ 54.) Plaintiff claims she met

with Defendant Rodriguez on December 8, 2016, and Rodriguez allegedly told Plaintiff that he would not renew Plaintiff's "arthritis medication *at the time*" because it is "hard on your kidneys." (*Id.* at ¶ 56) (emphasis added). Plaintiff alleges that Rodriguez was unwilling to look at Plaintiff's tongue, and told Plaintiff that she would not receive any additional medical care unless Rodriguez was instructed to provide such care by a superior or by a court. (*Id.* at ¶ 57.)

Based on these allegations in Count Five, Plaintiff alleges all Defendants owed her a duty of care. (*Id.* at ¶ 80.) Plaintiff alleges that the Defendants breached this duty by "denying [Plaintiff] access to adequate medical and mental health care, failing to provide medical and mental health treatment, and/or otherwise neglecting Plaintiff's medical and mental health needs." (*Id.* at ¶ 81.) Plaintiff argues that Defendants' breach of their duty of care was the proximate cause of Plaintiff's injuries, and that Defendant Corizon, as an employer of all or some of the individual defendant employees, is liable under the doctrine of *respondeat superior*. (*Id.* at ¶ 82–83.) In Counts Two and Three, which are based on the same allegations that support Count Five, Plaintiff asserts claims for intentional and negligent infliction of emotional distress against all Defendants. (*Id.* at ¶¶ 65–73.)

**IV. Analysis**

    **A. Plaintiff' Asserts Medical Malpractice Claims**

Arizona law defines a medical malpractice action as an "action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services . . . ." Ariz. Rev. Stat. § 12-561(2). In determining whether Counts Two, Three, and Five against the Corizon Defendants fit within this definition, the Court does not simply defer to the type of claim Plaintiff asserts. *Scoins v. Goddard*, 2007 WL 1063168, at *3 (D. Ariz. Apr. 6, 2007) ("the type of claim asserted does not determine the legal classification.") (quoting *Kenyon v. Hammer*, 688 P.2d 961, 969 (Ariz. 1984)) (internal citations omitted). In

*Kenyon*, the Arizona Supreme Court held that, "[e]ven if not of the true malpractice variety, a claim falls within the statute if it is made against a licensed health care provider and is 'based upon' the defendant's alleged negligent conduct 'in the rendering of health care, medical services . . . or other health related services.'" *Kenyon*, 688 P.2d at 969 (quoting Ariz. Rev. Stat. § 12–561(2)).

To determine whether Counts Two, Three, and Five fall within the medical malpractice statutes, the Court must first determine whether Defendant Corizon and Defendant Rodriquez qualify as "licensed health care provider[s]." *See* Ariz. Rev. Stat. § 12-561(1)(a). A "licensed health care provider" is defined as a "person, corporation, or institution licensed or certified by the state to provide health care, medical services, nursing services, or other health-related services . . . ." *Id.* The parties do not dispute that Defendant Corizon is a health care corporation that provided medical services to inmates in the custody of the ADC. (Doc. 15 ¶ 9; Doc. 36 at 2.) The parties do not dispute that Defendant Rodriguez is a licensed physician's assistant who was employed by Corizon at the Perryville facility during the period of time relevant to the harm alleged. (Doc. 15 at ¶ 11; Doc. 36 at 2–3.) Under a straightforward application of the statutory language to Corizon and Rodriguez, both defendants fall within the definition of a "licensed health care provider."[4] Ariz. Rev. Stat. § 12-561(1)(a).

The inquiry then shifts to whether the claims are "based upon the defendant[s'] alleged negligent conduct in the rendering of health care, medical services . . . or other health related services." *Hammer*, 688 P.2d at 969 (internal citations and quotations omitted). In Count Five, Plaintiff asserts that Defendants, including the Corizon Defendants, were negligent in rendering healthcare. (Doc. 15 at ¶¶ 79–84.) Plaintiff has not disputed the Corizon Defendants' assertion that Plaintiff's claims in Count Five

---

[4] The Court's conclusion is further supported by this Court's decision in *Scoins*, 2007 WL 1063168, at *3 (holding that defendant health care companies, "whose only alleged contact with plaintiff is through their provision of medical services[,]" fell within the statutory definition of "licensed health care provider[s]"), and *Am. Iron and Steel Inst. v. OSHA*, 182 F.3d 1261, 1266–67 (11th Cir. 1999) (including nurses and physician's assistants in in the court's definition of "non-physician licensed health care professionals.").

constitute medical malpractice claims. Therefore, the Court concludes that Plaintiff's claims in Count Five constitute medical malpractice claims under Ariz. Rev. Stat. § 12-561 and are subject to the case maintenance statutes in Ariz. Rev. Stat. §§ 12-2603 and 12-2604.

Furthermore, as the Court found in its February 5, 2018 Order, "Plaintiff's claims for negligent and intentional infliction of emotional distress in Counts Two and Three, which are based on allegations of . . . medical negligence, are [']medical malpractice['] claims as defined in [Ariz. Rev. Stat.] § 12-561(B)." (Doc. 75 at 10.) Counts Two, Three, and Five allege substantively the same claims against all Defendants. (*See generally* Doc. 15 at ¶¶ 65–84.) Therefore, the Court's conclusion in its February 5, 2018 Order—that the medical negligence, as well as the negligent and intentional infliction of emotional distress, claims constitute a medical malpractice claim under Ariz. Rev. Stat. § 12-561(2)—also applies to the Corizon Defendants.[5] (*See* Doc. 75.)

### B. Plaintiff's Claims Require Expert Testimony

The Corizon Defendants argue that Plaintiff's state law medical claims asserted against them in Counts Two, Three, and Five require expert medical testimony. (Doc. 81 at 4.) As discussed above in Section IV.A, Counts Two, Three, and Five all qualify as medical malpractice claims under Arizona law. To maintain a medical malpractice action, Plaintiff must establish both that Defendants Corizon and Rodriguez fell below the applicable standard of care, and that the breach of the standard of care caused Plaintiff's injuries.[6] (Doc. 81 at 5); *see* Ariz. Rev. Stat. § 12-563; *Potter v. Wisner*, 823 P.2d 1339, 1341 (Ariz. Ct. App. 1991). Therefore, the Corizon Defendants argue that Plaintiff must establish the standard of care applicable to Defendants, whether a breach

---

[5] *See Scoins*, 2007 WL 1063168, at *3 (plaintiff asserted claims of negligence, medical negligence, intentional and negligent infliction of emotional distress, and breach of fiduciary duty against healthcare defendants, but the court found that all the claims were "nothing more than an allegation of medical negligence based upon [the defendants] provision of medical services to plaintiff and . . . therefore these claims [fell] within the [medical malpractice] Act [(Ariz. Rev. Stat. § 12–561 et seq.)]").

[6] Additional Arizona cases support Defendants' characterization of the prima facie elements of a medical malpractice claim. *See Rasor v. Northwest Hosp., LLC*, 403 P.3d 572, 575 (Ariz. 2017); *Potter*, 823 P.2d at 1341.

occurred, and if so, whether the breach caused Plaintiff's injuries. (Doc. 81 at 4.) This can only be done, the Corizon Defendants argue, through expert testimony, and therefore Plaintiff must adhere to the requirements in Ariz. Rev. Stat. § 12-2603 by submitting a preliminary expert opinion affidavit. (Doc. 61 at 3.) As set forth below, the Court agrees.

As an initial matter, because Plaintiff argues that Corizon, as the employer of Defendant Gray, is liable for Defendant Gray's alleged negligence under the doctrine of *respondeat superior*,[7] the preliminary expert opinion affidavit required for Plaintiff's claims against Defendant Gray is also required for Plaintiff's claims against Corizon based on Defendant Gray's conduct.[8] However, the Court must still determine whether expert testimony is required for Plaintiff's claims in Counts Two, Three, and Five based on Rodriguez's actions and Corizon's general policies and administration.

For Plaintiff to meet the first element of her medical malpractice claim, she must establish the standard of care applicable to the Corizon Defendants and prove those Defendants fell short of that standard. *See* Ariz. Rev. Stat. § 12-563; *Potter*, 823 P.2d at 1341. As the court noted in *Seisinger*, "Arizona courts have long held that the standard of care normally must be established by expert medical testimony." 203 P.3d 483, 492 (Ariz. 2009). There is an exception to this general rule when the alleged negligence is "so grossly apparent that a layman would have no difficulty in recognizing [it]" as a deviation from the standard of care. *Riedisser v. Nelson*, 544 P.2d 1052, 1054 (Ariz. 1975); *see also Rasor*, 403 P.3d at 575 ("Unless malpractice is grossly apparent, the standard of care must be established by expert medical testimony.").

In *Riedisser*, the Arizona Supreme Court cautioned courts reviewing the state's medical malpractice statutes, that "[o]rdinarily, negligence of a doctor cannot be

---

[7] The doctrine of *respondeat superior* "imposes liability upon the master for the acts of his servants committed in the course or within the scope of their employment." *Anderson v. Gobea*, 501 P.2d 453, 456 (Ariz. Ct. App. 1972).

[8] *See Muniz v. Anderson*, 2018 WL 897680, at *1 (Ariz. Ct. App. Feb. 15, 2018) (ordering the plaintiff to serve a preliminary expert opinion to support claim that a correctional healthcare company defendant is liable for the alleged negligence of one of its health care workers).

presumed in hindsight to be so gross that a layman can recognize it solely because an injury did occur." 544 P.2d at 1054. The court noted that whether complications suffered by the plaintiff were more probably than not the result of negligence was not a matter of common knowledge among laymen, and therefore expert testimony was required.[9] *Id.* In this case, Plaintiff's allegations that she suffered complications arising out of previously administered medical care, and that those complications were compounded by subsequent negligent care, are similar to the medical negligence allegations in *Riedisser*.

Specifically, Plaintiff alleges that Rodriguez was unwilling to examine Plaintiff's tongue, and told Plaintiff that she would not receive any additional medical care unless Rodriguez was instructed to provide such care by a superior or by a court. (Doc. 15 at ¶ 57.) Plaintiff's failure-to-provide care claim is appropriately classified as a state law negligence claim. *See Madrid v. Maricopa County*, 2011 WL 1578506, at *1, *6 (D. Ariz. Apr. 27, 2011). As the court held in *Riedisser*, whether health complications suffered by the plaintiff were more probably than not the result of negligence in subsequent medical care is not a matter of common knowledge among laymen, and therefore expert testimony is required.[10] *Riedisser*, 544 P.2d at 1054.

Plaintiff further claims that Defendant Rodriguez refused to renew Plaintiff's

---

[9] This conclusion is consistent with how other states and the Ninth Circuit have addressed medical malpractice claims. *See, e.g.*, *Yocom v. Cole*, 904 F.2d 711 (9th Cir. 1990) (holding that with regard to the elements of Washington State's medical malpractice law, "[e]xpert testimony is essential to proof of both . . .elements"—(1) that the health care provider failed to exercise the appropriate degree of care, and (2) that such failure was the proximate cause of the complained-of injury) (citing Wash. Rev. Code. § 7.70.040 (West Supp.1989)); *Shoberg v. Kelly*, 463 P.2d 280, 282 (Wash. Ct. App. 1969), *rev. denied*, 78 Wash. 2d 992 (1970) ("Neither the trial court nor this court can hold, as a matter of law, that the applicable standard of care or its probable violation is in the common knowledge of lay triers of the fact so as to dispense with medical expert testimony.")); *Siverson v. Weber*, 372 P.2d 97 (Cal. 1962) (in rejecting the application of the *res ipsa loquitur* doctrine to a medical malpractice case where no expert witness testimony was put forth, the court held "the fact that a particular injury suffered by a patient as the result of an operation is something that rarely occurs does not in itself provide that the injury was probably caused by the negligence of those in charge of the operation.").

[10] The Court reached this same conclusion in its February 5, 2018 Order finding that the applicable standard of care, whether Defendant Gray breached that standard, and whether any breach caused Plaintiff's alleged injuries, are not matters within the common knowledge of a layperson. (Doc. 75 at 11.)

arthritis medication "at the time" they met because it is "hard on your kidneys." (Doc. 15 at ¶ 56.) Whether Rodriguez's explanation constitutes medically-valid and reasonable grounds for refusal to renew arthritis medication is not within the knowledge of a layperson, and is not so clearly a deviation from the standard of care as to constitute grossly apparent malpractice. *Riedisser*, 544 P.2d at 1054; *see also Rasor*, 403 P.3d at 492. Therefore, expert testimony is required for this inquiry.

Furthermore, because Plaintiff argues that Corizon is liable for Defendant Rodriguez's actions under the doctrine of *respondeat superior* (Doc. 15 at ¶¶ 68, 72, 83), as Corizon employed Rodriguez at all times relevant to Plaintiff's claims (Doc. 15 at ¶ 11; Doc. 36 at ¶ 11), Plaintiff must present expert testimony to support her claims against Corizon based on Rodriguez's actions (and alleged inaction). Therefore, Plaintiff is required to provide expert medical opinion testimony to establish and maintain her state law medical malpractice claims against Defendants Corizon and Rodriguez. *See* Ariz. Rev. Stat. § 12-2603.

## V. Conclusion

For these reasons, the Court concludes that Plaintiff must present expert medical opinion testimony to establish her state law claims asserted against the Corizon Defendants in Counts Two, Three and Five. Therefore, Plaintiff must comply with the preliminary expert opinion affidavit requirements of Ariz. Rev. Stat. § 12-2603.

Accordingly,

**IT IS ORDERED** that Defendant Corizon's and Defendant Rodriguez's Motion to Compel Submission of Preliminary Expert Affidavit (Doc. 81) is **GRANTED**.

**IT IS FURTHER ORDERED** that within **twenty-one days** of the date of this Order, Plaintiff shall provide a preliminary expert opinion affidavit in accordance with Ariz. Rev. Stat. § 12-2603.

Dated this 20th day of September, 2018.

Bridget S. Bade
United States Magistrate Judge